# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1248 | **DATE** | 10/6/2000 |
| **CASE TITLE** | Francorp, Inc. Vs. Mark Siebert et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for partial summary judgment is granted as to counts V-IX. Status hearing set for October 25, 2000 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | OCT 1 0 2000 | | |
| | Notified counsel by telephone. | | date docketed | | 36 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| WAH | courtroom deputy's initials | | date mailed notice | | |

ED-7
FILED FOR DOCKETING
00 OCT -6 PM 3: 22

Date/time received in central Clerk's Office

mailing deputy initials

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FRANCORP, INC., )
)
      Plaintiff, )
)
  vs. )   No. 00 C 1248
)
MARK SIEBERT, MARK SIEBERT & )
ASSOCIATES, INC., also doing business )
as Siebert & Associates, Inc. and as The )
iFranchise Group, Inc., TOMMY D. )
PAYNE, DAN LEVY, LAURIE LUDES )
and JUDY JANUSZ, )
)
      Defendants. )

DOCKETED

OCT 1 0 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Francorp, Inc. (Francorp) brings this action alleging that defendants Mark Siebert (Siebert), Tommy D. Payne (Payne), Dan Levy (Levy), Laurie Ludes (Ludes), and Judy Janusz (Janusz) left Francorp to form a competing company, defendant Mark Siebert & Associates, Inc. (MSA), in violation of copyright, contract, and tort law. The individual defendants now move for partial summary judgment with respect to Francorp's breach of contract claims, counts V through IX. For the reasons set forth below, we grant the motion.

## BACKGROUND

Siebert started working at Francorp in 1985 and became the company's president in 1995. In 1997, Francorp began experiencing some troubles and Siebert worked with Francorp chairman Don Boroian to right the company. Toward this effort a number of employees were laid off in June 1998, and others offered to take voluntary pay cuts. In July 1998, Francorp hired a consultant, Elaine Rubin, to help create an internet strategy for the company. Also in



1998, Boroian and Siebert worked with Levy, then an executive vice-president at Francorp, to formulate a new business strategy for Francorp's future, referred to internally as the Premium Development Program (PDP). Despite these efforts, the troubles at Francorp persisted.

In August 1998, Siebert and Levy left Francorp to form MSA.[1] Since then, three others have left Francorp to join MSA: Payne, formerly a vice-president and senior attorney at Francorp, left to join MSA in August 1999; Ludes, who served as Francorp's vice-president of operations and client services, did the same in June 1999; and Janusz, a former Francorp media director, left to work for MSA in September 1998, returned to Francorp on a part-time basis in November 1998 (while continuing to work on an independent contractor basis with MSA as well), and then left Francorp permanently for MSA in August 1999. These five individuals all state that they departed from Francorp because they had not been paid for several weeks at the time of their leaving the company.

Francorp claims that unissued paychecks had nothing to do with the individual defendants' departure. According to Francorp, Siebert and Levy had been plotting to leave Francorp and take secret information with them for some time prior to August 1998. Francorp states that Siebert and Levy did take confidential information with them when they left Francorp to form MSA, and then later lured away Payne, Ludes, and Janusz. As evidence of defendants' wrongdoing Francorp asserts (among other things) that MSA implemented an internet strategy similar to the one developed for Francorp by Rubin, that MSA's website

---

[1]MSA, which does business as Siebert & Associates, Inc. and as The iFranchise Group, Inc., is also a defendant in this lawsuit but does not join in the instant motion.

contains a client list which includes many of Francorp's clients, and that MSA's business strategy incorporates features of the PDP. Furthermore, Francorp points out that all of the individual defendants except Janusz were members of Francorp's executive committee and that Siebert, Levy and Payne sat on the even more exclusive chairman's committee, and therefore the individual defendants had access to Francorp's confidential commercial assets, including the company's development and pricing strategies. Based on this alleged wrongdoing, Francorp levels a number of federal and state law claims against defendants.[2]

The individual defendants (hereinafter "defendants") have moved for summary judgment with respect to the breach of contract claims raised in the complaint, and we will focus on those counts here (counts V-IX). In early 1998 each of the defendants entered into an identical restrictive covenant with Francorp. These agreements prohibit defendants from ever using or disclosing Francorp's confidential information and further bar them from attempting to solicit away any Francorp clients or prospective clients or to otherwise compete with Francorp for a period of one year after their termination from the company, and from attempting to lure away any Francorp employees for a period of six months after their termination (cplt., exhs. A-E). Francorp alleges that defendants' conduct in leaving Francorp and forming and operating MSA constituted a breach of the agreements. Defendants contest these allegations, claiming that the covenants are not enforceable against them and, even if they are, defendants' behavior did not amount to a breach.

---

[2]Francorp's 14-count complaint, filed on March 2, 2000, alleges copyright infringement (count I), violation of the Illinois Consumer Fraud (count II) and Deceptive Trade Practices Acts (count III), conspiracy (count IV), breach of contract (counts V-IX), breach of fiduciary duty (counts X and XI), intentional interference (count XII) and tortious interference with contractual relations (count XIII), and violation of the Lanham Act (count XIV).

## DISCUSSION

Illinois courts have long been hostile toward restrictive covenants as restraints on trade and contrary to sound public policy. *See* Office Mates 5, North Shore, Inc. v. Hazen, 599 N.E.2d 1072, 1080 (Ill. App. 1 Dist. 1992), *appeal denied*, 610 N.E.2d 1266 (Ill. 1993); Central Specialties Co. v. Schaefer, 318 F.Supp. 855, 857 (N.D. Ill. 1970). Restrictive covenants between employers and employees are particularly disfavored. *See* Trailer Leasing Co. v. Associates Commercial Corp., 1996 WL 392135, at *1 (N.D. Ill. July 10, 1996) (*citing* Jefco Laboratories, Inc. v. Carroo, 483 N.E.2d 999, 1001 (Ill. App. 1 Dist. 1985)). When examining a covenant not to compete under Illinois law, a court must determine whether the terms of the covenant are reasonable and whether the agreement is necessary to protect a legitimate business interest of the employer. *See* Outsource International, Inc. v. Barton, 192 F.3d 662, 666-67 (7th Cir. 1999); Office Mates, 599 N.E.2d at 1080. Furthermore, a court must ascertain that the covenant is ancillary to a valid contract and subordinate to the contract's main purpose and that there is adequate consideration to support the covenant. Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc., 685 N.E.2d 434, 441 (Ill. App. 2 Dist. 1997). Of course, restrictive covenants must also satisfy the basic rigors of contract law.

Defendants attack the covenants on three different levels. Their first argument is based on general contract law. They argue that Francorp's violation of the employment relationship excuses defendants from complying with the agreements. Defendants' second set of arguments are more specific to restrictive covenants. They argue that there is insufficient consideration to support the covenants, that the agreements are overbroad in scope and therefore unreasonable, and that there is no legitimate business interest on the part of Francorp at stake

here. Finally, defendants raise a number of arguments specific to certain individual defendants. We agree with defendants' first argument and therefore do not discuss the other points raised in their motion.

Defendants argue that Francorp's failure to pay them in a timely fashion constituted a breach of the employment relationship between Francorp and defendants, thereby excusing defendants from any obligations they had under the restrictive covenants. Under company policy, Francorp was required to pay its employees on a bi-weekly basis (Siebert reply aff. ¶23). At the time of their departure from Francorp, however, each defendant had not been paid for several weeks. Specifically, Siebert was owed 14 weeks of pay (or approximately $75,000), Payne also was owed 14 weeks of pay (amounting to $17,500), Levy was owed 8 weeks of pay (or $12,000), Ludes was owed 10 weeks of pay (or $14,000), and Janusz was owed six weeks of pay (or $3,200) (def. stmt. at ¶¶ 2-6).[3] Defendants claim that Francorp's failure to pay materially breached the employment relationship between the parties and therefore the restrictive covenants are not enforceable against them. In other words, Francorp did not pay them, so all bets are off.

In Rao v. Rao, 718 F.2d 219 (7th Cir. 1983), the Seventh Circuit, applying Illinois law, held that since every contract contains an implied covenant of good faith, an employer cannot fire an employee in bad faith and then seek to enforce a restrictive covenant contained in the employment contract. Rao, 718 F.2d at 223-24. The court reasoned that upholding a covenant not to compete in such circumstances would be unreasonably oppressive and neither necessary

---

[3]We will refer to the parties' factual statements filed pursuant to Local Rule 56.1 as "plf. stmt." and "def. stmt.," and to their responses to those statements as "plf. resp." and "def. reply."

to protect the legitimate business interests of the employer nor required to prevent improper or unfair competition. *Id.* The rule of <u>Rao</u> is derived from the more general principle that a material breach of a contract by one party excuses nonperformance on the part of the non-breaching party. *See* <u>Arrow Master, Inc. v. Unique Forming Ltd.</u>, 12 F.3d 709, 714 (7th Cir. 1993); <u>Borys v. Rudd</u>, 566 N.E.2d 310, 315 (Ill. App. 1 Dist. 1990), *appeal denied*, 575 N.E.2d 911 (Ill. 1991). <u>Rao</u> held that firing an employee in bad faith breaches the employment contract (specifically, the implied covenant of good faith) and therefore excuses the employee from complying with a restrictive covenant contained in that contract. *See* <u>Dunning v. Chemical Waste Management, Inc.</u>, 1997 WL 222891, at *10-11 (N.D. Ill. Apr. 24, 1997) (holding that an employer cannot materially breach an employment contract "and then expect to uphold the restrictive covenant as well").

<u>Bishop v. Lakeland Animal Hospital, P.C.</u>, 644 N.E.2d 33 (Ill. App. 2 Dist. 1994), takes the rule farther, holding that an employer cannot enforce a noncompetition agreement against an employee who has been dismissed without cause, even if the employment contract authorizes such termination, because firing without cause breaches the implied covenant of good faith inherent in every contract. *Id.* at 36. Other Illinois cases are in accord with <u>Rao</u> and <u>Bishop</u>. *See* <u>Galesburg Clinic Association v. West</u>, 706 N.E.2d 1035, 1036-37 (Ill. App. 3 Dist. 1999) (excusing compliance with restrictive covenant where partnership agreement had been breached); <u>C.G. Caster Co. v. Regan</u>, 410 N.E.2d 422, 426-27 (Ill. App. 1 Dist. 1980) (holding that employer's failure to pay contractually-required termination benefits excused former employee from complying with restrictive covenant). Thus, if an employer materially breaches its employment contract with an employee, *e.g.*, by acting in bad faith or firing the

employee without cause, it cannot then enforce a restrictive covenant against that former employee.

Francorp materially breached its employment relationship with defendants in this case by failing to pay them for a substantial period prior to their departure from the company. It is axiomatic that an employer's failure to compensate its employees violates the employment relationship. *See* Colosi v. Electri-Flex Co., 965 F.2d 500, 504 (7th Cir. 1992) ("Employment at will is a contractual relationship, one which entitles the employee to all wages and other benefits that he has earned..."); McKnight v. General Motors Corp., 908 F.2d 104, 109 (7th Cir. 1990) ("Employment at will is not a state of nature but a continuing contractual relation. Wages, benefits, duties, working conditions ... are specified [terms] and a breach of any of them will give the employee a cause of action for breach of contract."), *cert. denied*, 499 U.S. 919 (1991); Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*. True, defendants tolerated late paychecks for a time and exhibited an understanding toward Francorp's financial condition (def. reply at ¶ 15; Siebert reply aff. at ¶ 13; plf. resp. to req. to admit nos. 22-23), but they had never agreed to work for free. Compensation was central to their employment relationship with Francorp, and Francorp's failure to pay breached that relationship.

Furthermore, Francorp's breach was a material one. *See* Arrow Master, 12 F.3d at 714 (only a material breach will excuse the non-breaching party from performing its contractual duties). The materiality of a breach depends on the "inherent justice of the matter," and on whether "the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it." *Id.* at 714-15

(citations and quotation marks omitted).[4] As defendants point out, Francorp was as many as 14 weeks behind in payroll and owed the defendants between $3,200 and $75,000 in salary (def. stmt. at ¶¶ 2-6). Defendants were out a substantial amount of money for lengthy periods of time. Bills, mortgages and other financial obligations undoubtedly weighed upon them. It is unlikely that defendants would have entered into the employment arrangement with Francorp knowing what they do now. By any measure, Francorp's failure to pay defendants constituted a material breach of the employment agreement between the parties. Having committed a material breach, Francorp cannot now seek to enforce the restrictive covenants against defendants. *See* C.G. Caster, 410 N.E.2d at 426-27. Therefore, Francorp's breach of contract claims must fail.[5]

## CONCLUSION

For the reasons set forth above, defendants' motion for partial summary judgment is granted as to counts V-IX.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 6, 2000.

---

[4]In determining materiality, Illinois courts consider "whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal nonperformance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage." Arrow Master, 12 F.3d at 715 (*quoting* Sahadi v. Continental Illinois Nat. Bank & Trust Co., 706 F.2d 193, 196 (7th Cir. 1983)).

[5]In its defense against defendants' motion, Francorp raises a number of allegations and arguments regarding the purported theft of confidential information by defendants. Our holding dismisses only the breach of contract claims, and therefore many of these issues can still be raised (and, indeed, are more appropriately placed) in the context of Francorp's other counts.