Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1248 | **DATE** | 9/28/2001 |
| **CASE TITLE** | Francorp., Inc. vs. Mark Siebert, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ Enter Memorandum Opinion and Order, for the forgoing reasons, we grant summary judgment for defendants, Levy, Payne and Janusz, but deny it with respect to Ludes. In disposing of this portion of the case, we note that there are still some lingering discovery issues. On September 19, 2001, we continued generally plaintiff's outstanding motion to compel, as the parties continue to negotiate. Consequently, we grant plaintiff leave to file a motion to reconsider with respect to Levy, Payne and Janusz should that discovery yield substantial evidence that those defendants were actively involved in the alleged wrongdoings. We also think the time for being far more specific about what secrets were improperly appropriated and what material was improperly copied is long overdue. (50-1,56-1,57-1,58-1)
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 28 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 121 |
| | Mail AO 450 form. | CM docketing deputy initials | |
| | Copy to judge/magistrate judge. | FOR DOCKETING | |
| | | 01 SEP 28 PM 3:35 | |
| TP | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANCORP., INC.,

      Plaintiff

v.

MARK SIEBERT, MARK SIEBERT &
ASSOCIATES, INC., also doing business
as Siebert & Associates, Inc. and as The
iFranchise Group, Inc., TOMMY D.
PAYNE, DAN LEVY, LAURIE LUDES
and JUDY JANUSZ,

      Defendants.

No. 00 C 1248

DOCKETED
SEP 2 8 2001

## MEMORANDUM OPINION AND ORDER

This is another chapter in the continuing battle between plaintiff Francorp, Inc. (Francorp) and several of its former employees. Francorp initially alleged that defendants Mark Siebert (Siebert), Tommy D. Payne (Payne), Dan Levy (Levy), Laurie Ludes (Ludes), and Judy Janusz (Janusz) left Francorp to form a competing company, defendant Mark Siebert & Associates, Inc. (MSA), in violation of copyright, contract, and tort law. We previously granted summary judgment for defendants on the contract claims, counts V-IX, *see* Francorp, Inc. v. Siebert, 126 F.Supp. 543 (N.D. Ill. 2000), and for Siebert on a tortious interference claim, count XIII. *See* Francorp, Inc. v. Siebert, 2000 WL 1741918 (N.D. Ill. Nov. 24, 2000). There are currently seven separate motions for partial summary judgment pending before us. This opinion will address four of those. Payne, Levy, Ludes and Janusz (collectively "defendants") have moved for partial summary judgment with respect to the remaining claims against them individually, counts I through IV, XI and XIV.[1] For the reasons set forth below, we grant

---

[1] Only Payne is named in count XI. Levy does not now move for summary judgment on count XII.

summary judgment for Levy, Payne and Janusz, but deny it with respect to Ludes.

## BACKGROUND

In 1997, Francorp began experiencing troubles and Siebert worked with Francorp chairman Don Boroian to right the company. In July 1998, Francorp hired a consultant, Elaine Rubin, to help create an internet strategy for the company. Also in 1998, Boroian and Siebert worked with Levy, then an executive vice-president at Francorp, to formulate a new business strategy for Francorp's future, referred to internally as the Premium Development Program (PDP). Despite these efforts, the troubles at Francorp persisted.

In August 1998, Siebert left Francorp to form MSA.[2] Since then, the other four individual defendants have each left Francorp and worked with MSA in some capacity: Levy, on the same day as Siebert in August 1998; Payne, formerly a vice-president and senior attorney at Francorp, in August 1999; Ludes, who served as Francorp's vice-president of operations and client services, in June 1999; and Janusz, a former Francorp media director, who left in September 1998, returned to Francorp on a part-time basis in November 1998 (while continuing to work on an independent contractor basis with MSA as well), and then left Francorp permanently in August 1999. Our prior opinions describe the circumstances surrounding defendants' departures from Francorp in greater detail. The exact nature of each defendant's subsequent relationship with MSA remains in dispute.

According to Francorp, Siebert and Levy had been plotting to leave Francorp and take secret information with them for some time prior to August 1998. Francorp states that Siebert and Levy did take confidential information with them when they left Francorp to form MSA,

---

[2]Siebert, individually, and MSA, which does business as Siebert & Associates, Inc. and as The iFranchise Group, Inc. (iFranchise), are also defendants in this lawsuit but do not join in the instant motions.

and then later lured away Payne, Ludes, and Janusz, who spirited away additional Francorp secrets. Siebert, Levy and Ludes allegedly held secret meetings, from which other Francorp executives were excluded – when someone else entered the room, all conversations mysteriously ceased until that person departed. As further evidence of defendants' wrongdoing Francorp asserts (among other things) that MSA retained Rubin and implemented an internet strategy similar to the one she developed for Francorp, that MSA's website contains a client list which includes many of Francorp's clients, and that MSA's business strategy incorporates features of the PDP. Furthermore, Francorp points out that all of the individual defendants except Janusz were members of Francorp's executive committee and that Siebert, Levy and Payne sat on the even more exclusive chairman's committee, and therefore the individual defendants had access to Francorp's confidential commercial assets, including the company's development and pricing strategies. Based on this alleged wrongdoing, Francorp levels a number of federal and state law claims against defendants.[3]

## DISCUSSION

We may only grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We must also draw all inferences and view all admissible evidence in the light most favorable to Francorp, the non-moving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This does not mean there must be absolutely no evidence supporting the non-moving party, but rather there is not enough to support a

---

[3]Francorp's 14-count complaint, filed on March 2, 2000, alleged copyright infringement (count I), violation of the Illinois Consumer Fraud (count II) and Deceptive Trade Practices Acts (count III), conspiracy (count IV), breach of contract (counts V-IX), breach of fiduciary duty (counts X and XI), intentional interference (count XII) and tortious interference with contractual relations (count XIII), and violation of the Lanham Act (count XIV). As discussed above, our prior opinions have disposed of counts V-IX and XIII.

reasonable jury verdict. *Id.* at 248.

The instant motions focus on MSA's promotional materials, *e.g.*, its web site and brochures. Francorp maintains that these materials violate their copyrights and constitute fraudulent, unfair and deceptive business practices. While those contentions are disputed, defendants in these motions do not reach the merits of those issues. Instead, they argue that they, as individuals, had nothing to do with creating them, *i.e.*, Siebert acted alone. Consequently, we will not consider whether the materials in question do, in fact, violate these statutes. We will only discuss whether each defendant was sufficiently involved to incur liability. Any distinction among the different counts essentially drops out of the equation. If an individual was sufficiently involved in MSA's practices to create questions of fact as to one count, then those questions will apply similarly to all counts. Because the parties' arguments primarily focus on the role of each participant in MSA's affairs, rather than the individual counts, we will organize our discussion that way as well, leaving to another day the theories upon which the case can go forward. We deal with each of the four moving defendants in turn.

## I. Defendant Dan Levy

Much of the material plaintiff relies upon is immaterial to resolution of Levy's motion. We are not concerned here with his relationship with Francorp or his opinions of Francorp after he left. But we are also not concerned with his status as an independent contractor or as an employee. Plaintiff's case must rest upon its claim that Levy knowingly used pirated Francorp materials and secrets when he acted for MSA, that he was knowingly and "actively involved" in using Francorp's protected materials and secrets to promote and sell services.

What we know about that is very little. Levy allowed his biography to be posted on the

iFranchise Group website. One or more enterprises listed as "clients we've helped" were clients Levy helped at Francorp. He did some work for MSA as an independent contractor, but we are not directed to any evidence indicating what the nature of the work was or what he was paid. Both he and Siebert deny that he had anything to do with the preparation of the website or any MSA brochures. According to witnesses for the plaintiff, Levy had indicated on various occasions that he intended to go into business with Siebert and urged others to do so as well. Both Levy and Siebert deny that Levy has any interest in Siebert's business.

A reasonable jury could not find Levy liable on such a thin record. His motion for summary judgment is granted.

II. Defendant Laurie Ludes

Ludes did do considerable work for MSA over a six-month period, first as an individual independent contractor and then through a company she incorporated. She sought to generate leads for Siebert and then "followed-up" on them. Ludes, in her affidavit, attested that she generated 300 leads but only one became a client. For that she was paid $8,500. Both she and Siebert deny that she had anything to do with the website or brochure, other than to comment once that the website looked good after Siebert asked her to look at it. An ad for iFranchise lists Ludes' address as a contact mailing address. A call in February 2000 to the iFranchise number reached Ludes. According to the affidavit of Sabrina Oviedo, who described herself as a potential franchiser and whom defendants describe as a plant, Ludes had negative things to say about Francorp and sent her a packet of material which included a brochure and Ludes' business card, describing her as a senior consultant of iFranchise. One can reasonably infer that the packet, with covering letter, was a typical "follow-up."

That does not take plaintiff very far, but it is, for now, enough to defeat the motion for summary judgment. We have yet to be told what was deceptive about the brochure and what part of it was copied. Presumably plaintiff will contend that Ludes had to know, from her experience at Francorp, that the brochure was deceptive and copied, but we are not there yet. For now, then, it is enough that there is evidence that Ludes was actively involved in sending out accused materials.

### III. Defendant Tommy Payne

He was Francorp's general counsel. Like Ludes, his title with iFranchise was that of Senior Consultant. But he had little, if any, connection to marketing. MSA's brochures and web site included his biography, which he concedes preparing. But plaintiff does not argue that his biography was false, defamatory, unfair or otherwise illegal. Rather, it appears Francorp is maintaining that contributing any "content" to those materials makes Payne responsible for the web site and brochures as a whole. With this we disagree. Contributing legal content to materials that violate the law in other respects is not illegal, unless plaintiff can show he knew of the illegality. As the record now stands, all Payne did was submit his biography to MSA. Someone else at MSA then included that biography in brochures and on a web site that contained the controversial materials. Unless Payne had knowledge that those materials were illegal, he committed no wrongful act. Francorp has failed to provide any evidence that Payne ever saw the allegedly infringing and misleading materials, nor that he knowingly disseminated them.

Plaintiff also asserts that Payne held himself out as connected with Francorp. But its only evidence of this is that a former client attempted to reach him at his old Francorp phone

number. Whatever inferences a misdialed phone call permit, this alone is clearly not enough to sustain the bevy of charges against him.[4]

## IV. Defendant Judy Janusz

The allegations against Janusz boil down to the fact that as Siebert's administrative assistant she had access to Francorp's marketing data and internet strategy, which plaintiff claims iFranchise has stolen. After initially leaving Francorp for MSA in September 1998, where she worked part-time, a total of 38 hours in 1998, she returned to Francorp part-time from November 1998 through August 1999, while also working part-time for MSA. She thereafter worked part-time for MSA until May 2000, when she became employed full-time. She has had no involvement with the website or promotional materials and is not in marketing. Plaintiff argues that this "job-hopping" is proof of her complicity in corporate espionage. There are also allegations that she was romantically involved with Siebert, and "would do anything for him." Without any further evidence, such innuendo is not enough to sustain a lawsuit.

## CONCLUSION

For the forgoing reasons, we grant summary judgment for defendants Levy, Payne and Janusz, but deny it with respect to Ludes. In disposing of this portion of the case, we note that there are still some lingering discovery issues. On September 19, 2001, we continued generally plaintiff's outstanding motion to compel, as the parties continue to negotiate. Consequently, we grant plaintiff leave to file a motion to reconsider with respect to Levy, Payne and Janusz should that discovery yield substantial evidence that those defendants were actively involved

---

[4] If anything, the fact that the client was calling to issue him a 1099, rather than paying Francorp, suggests that the client understood Payne to be independent from Francorp.

in the alleged wrongdoings. We also think the time for being far more specific about what secrets were improperly appropriated and what material was improperly copied is long overdue.

                                                 *JAMES B. MORAN*
                                 JAMES B. MORAN
                         Senior Judge, U.S. District Court

*Sept. 28*, 2001.