

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1248 | **DATE** | 11/13/2001 |
| **CASE TITLE** | Francorp, Inc. Vs. Mark Siebert et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for partial summary judgment on count I is granted, but Siebert's motion for summary judgment on count X and Francorp's motion to dismiss counterclaim II are both denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 15 2001 | 130 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | CM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | 01 NOV 14 AM 9:41 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
NOV 15 2001

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCORP, INC., <br><br> Plaintiff <br><br> vs. <br><br> MARK SIEBERT, MARK SIEBERT & ASSOCIATES, INC., also doing business as Siebert & Associates, Inc. and as The iFranchise Group, Inc., TOMMY D. PAYNE, DAN LEVY, LAURIE LUDES and JUDY JANUSZ, <br><br> Defendants. | No. 00 C 1248 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Francorp initially alleged that defendants Mark Siebert (Siebert), Tommy D. Payne (Payne), Dan Levy (Levy), Laurie Ludes (Ludes), and Judy Janusz (Janusz) left Francorp to form a competing company, defendant Mark Siebert & Associates, Inc. (MSA), d/b/a the iFranchise Group (iFranchise), in violation of copyright, contract, and tort law. MSA responded with a three-count counterclaim.[1] We have addressed several motions for partial summary judgment in three prior opinions. See Francorp, Inc. v. Siebert, 126 F.Supp. 543 (N.D. Ill. 2000); Francorp, Inc. v. Siebert, 2000 WL 1741918 (N.D.Ill. Nov. 24, 2000); Francorp, Inc. v. Siebert, 2001 WL 1159224 (N.D.Ill. Sept. 28, 2001).

---

[1] Francorp's 14-count complaint, filed March 2, 2000, alleged copyright infringement (count I), violation of the Illinois Consumer Fraud (count II) and Deceptive Trade Practices Acts (count III), conspiracy (count IV), breach of contract (counts V-IX), breach of fiduciary duty (counts X and XI), intentional interference (count XII) and tortious interference with contractual relations (count XIII), and violation of the Lanham Act (count XIV). The counterclaim alleged violations of the Lanham Act (counter I), the Illinois Deceptive Trade Practices Acts (counter II), and under Illinois common law for unauthorized practice of law (counter III). For clarity, we will refer to counts from Francorp's initial complaint as "count __," and counts from MSA's counterclaim as "counterclaim __."

Now before the court are the following motions: 1) Siebert and MSA's motion for summary judgment on count I (copyright); 2) Siebert's separate motion for summary judgment on count X (fiduciary duty); and 3) Francorp's motion to dismiss counterclaim II (deceptive trade practices) for lack of subject matter jurisdiction. For the reasons set forth below, we grant summary judgment for defendants on the copyright claim, but deny the other two motions.

## BACKGROUND

The facts in this case have been fully documented in our prior opinions. We will not repeat them again. By way of summary, Siebert was the president of Francorp. In 1997, Francorp began experiencing troubles and Siebert worked with chairman Don Boroian to right the company. Despite their efforts, the troubles at Francorp persisted. In August 1998, Siebert left Francorp to form MSA. Since then, several other Francorp officers and employees left the company and have worked with MSA in one capacity or another. The exact circumstances surrounding those departures and subsequent relationships with MSA remain in dispute.

## DISCUSSION

We may only grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We must also draw all inferences and view all admissible evidence in the light most favorable to Francorp, the non-moving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This does not mean there must be absolutely no evidence supporting the non-moving party, but, rather, that there is not enough to support a

reasonable jury verdict. *Id.* at 248.

## I. Fiduciary Duty (Count X)

Siebert raises two arguments in his motion. First, that he was not in fact Francorp's president, and therefore did not owe the company any duty. And second, that there is no evidence to support plaintiff's allegations of wrongdoing on his part.

Siebert claims that although he presented himself to the outside world as Francorp's president, he did not have actual authority to make major decisions. That power, he maintains, still resided with Boroian. Moreover, Boroian signed Francorp's annual reports, under penalties of perjury, as its president. Regardless, Siebert was unquestionably one of the upper level decision-makers within Francorp's hierarchy. Every president, no matter how broad his authority, ultimately has to answer to the controlling shareholders. Whatever authority Boroian retained, there is ample evidence that Siebert had substantial managerial responsibilities. Whether he was officially the president or not, he surely owed the company some duty. At the very least, his apparent authority creates a question of fact as to his duty.

On the second point, plaintiff has made very general allegations that Siebert sabotaged his then employer with the intention of forming his own company to compete against it. There are accounts of secret meetings with other officers to plan their departure and parties to recruit co-workers to defect with him. Plaintiff also maintains that Siebert has copied copyrighted materials, stole confidential information and used both to compete against Francorp. Siebert contends that plaintiff's allegations, *e.g.*, Siebert's failure to cut costs or to properly train other executives, should be characterized as poor management rather than anything illegal. This oversimplifies matters. The decisive question is Siebert's intent, not

whether the acts or omissions were inherently illegal. Bad management is not illegal. But the same management decisions, if motivated by an officer's self-interest instead of in his principal's interest, may have been tortious.

There are facts in the record from which a fact-finder could infer that Siebert was acting in his own interest, rather than Francorp's: there were closed-door meetings with select individuals; a number of upper management officials departed Francorp and established some kind of relationship with MSA within a short period of time; confidential documents are missing; MSA's website listed many Francorp clients; and several people connected with MSA have badmouthed Francorp to existing and potential clients. Siebert relies on other evidence suggesting that, to the contrary, he did everything possible to advance Francorp's interests – he took a voluntary pay cut and loaned personal funds to the company to help with the payroll. But this evidence just leaves his true intentions as a disputed question of fact that we cannot now resolve.

We agree with Siebert that the evidence against him is rather thin. Francorp's supporting affidavits add very little by way of specifics: which clients were solicited, what materials were copied, and what information was stolen. As we stated in our September 28, 2001 opinion, the time for specifics is long overdue. Nonetheless, we feel there are sufficient factual disputes to make summary judgment inappropriate at this time.

## II. Copyright (Count I)

This count focuses on the iFranchise website. Plaintiff makes seven specific allegations of how the site infringes Francorp's copyrighted materials:

    (1) seminar outline Section VII, "Franchising Defined";
    (2) seminar outline Section XXV, "The First Step";

(3) seminar outline Section XV, "Is Your Business Franchisable?";
(4) seminar outline Section XIII, "Advantages of Franchising Your Business";
(5) proposal document Part 4, "The Process of Franchising";
(6) promotional brochure section about international services; and
(7) 1990 report on *The Conversion of Dealer Organizations to Franchise Systems* - portions of "Executive Summary," "Introduction" and "Summary & Conclusions."

To establish a claim for copyright infringement, plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The instant motion does not raise issues of ownership or validity, so we are only concerned with the second element. Copying can be inferred from proof that the alleged infringer had access to the original work and that the works are substantially similar. *See* Wildlife Express Corp. v. Carol Wright Sales Inc., 18 F.3d 502, 508 (7th Cir. 1994). Access is clearly not disputed here, given Siebert's former and present positions with the two companies. Francorp maintains that the only remaining question is whether the web pages are substantially similar to its copyrighted materials, that this is inherently a jury question and that summary judgment is therefore inappropriate.

As a threshold matter, however, we must determine the extent of Francorp's copyrights:

> [A] side-by-side comparison [of the allegedly infringing and original works] is really not the right one to make. Rather, the trick is to begin with the allegedly aggrieved work in one hand and nothing in the other hand and ask "Is it copyrightable? And if so, in what respect? To what extent?" Those limiting questions define whether a comparison need to be made at all and, if so, also defines the universe for such a comparison.

Sassafras Enterprises, Inc. v. Roshco, Inc., 889 F.Supp. 343, 348 (N.D. Ill. 1995) (footnotes omitted). It is axiomatic that copyright protects expression, not ideas. *Id.* at 345. Plaintiff

points out that the U.S. Copyright Office issued registration certificates, meaning the materials must be copyrightable expression, and not ideas. This misses the point. The issuance of a copyright does not preclude the presence of ideas nor mean that all aspects of the document are protected. *See* Feist Publications, 499 U.S. at 348. In fact, every work contains ideas. So the question is not whether plaintiff's materials contained any original expression, but whether the iFranchise website copied protectable parts of that expression or merely used the same underlying ideas. "To determine the scope of copyright protection in a close case, a court may have to filter out ideas, processes, facts, idea/expression mergers, and other unprotectable elements of plaintiff's copyrighted materials to ascertain whether the defendant infringed protectable elements of those materials." Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 533-34 (5th Cir. 1994). Filtering out ideas here reveals that no protected expression has been copied.

Allegation 1, the definition of franchising, contains no original expression. Any such definition will necessarily be derived from the FTC's regulations. The record demonstrates that several books on the topic[2] and other franchising consultants' websites[3] all use the same basic three-part definition: name, system, and fee. Plaintiff's outline lists these three factors,[4]

---

[2] *See, e.g.*, Dave Thomas and Michael Said, Franchising for Dummies 10 (IDG Books Worldwide) (2000); Herbert Rust, Owning Your Own Franchise 6-7 (Prentice Hall) (1991); Andrew J. Sherman, Franchising and Licensing 87 (American Management Association) (1991).

[3] *See, e.g.*, McGrow, Inc., <http://www.mcgrow.com/WhatIsFranchising.htm> (visited 3/31/2000); National Franchise Consultants., <http://www.nfc-kit.com/whatis.html> (visited 2/23/2000); Franchise Profiles International, <www.franchise411.com/fpi/duckstory.html> (visited 3/31/2000).

[4] "A method of doing business by which a franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a frachisor and which is substantially associated with the franchisor's trade mark, name, logo or advertising.
　　A. Three elements of a franchise
　　　　1. Use of name

as does defendant's website.[5] Many of these texts offer fuller explanations of each element, the precise wording of which is arguably original expression meriting copyright protection. But the basic three-part definition does not. Francorp's outline only uses two- or three-word phrases. Because all the definitions use these terms, even Francorp's exact words are not unique. Moreover, such short phrases are ordinarily not entitled to copyright protection. *See* <u>Alberto-Culver Co. v. Andrea Dumon, Inc.</u>, 466 F.2d 705, 711 (7th Cir.1972).

Allegations 2-4 identify portions of the same seminar outline as the allegedly infringed document. Because this document expresses Francorp's ideas about franchising in such general form, it is only entitled to the thinnest of copyright protection. If defendant had appropriated the outline in its entirety, or had copied sections of it verbatim, that might constitute infringement. But that is not the case.

Part XIII presents the potential advantages of franchising. The outline and website do cite many of the same advantages, frequently using similar terms. For example, Francorp states that franchising "Allows for expansion with minimal capital." Defendant states the same concept slightly differently: "Capital: Since the franchisee uses his or her own capital, the franchisor has virtually no investment at the unit level. Franchising allows companies to leverage off the assets of their franchisees." Plaintiff states, "No contingent liability."

---

       2. Use of system
       3. Payment of fee"

[5]"1. Use of Name – The franchisee has the right to operate under a name that is the identifying mark of the system. Note that it is the right, not the obligation, which triggers the first element of the franchise definition.
    2. Use of Prescribed System of "significant control or assistance" – FTC Rule 436 lists 18 specific criteria in the area of significant control, any one of which may trigger the second element of the definition. Some of these elements include... .
    3. Payment of Fee – The franchisee pays a direct or indirect fee, initially or on an ongoing basis. This can come in the form of ... ."

Defendant explains, "Limited Contingent Liability: The franchisor will not be signing leases, taking on financing, etc., and will thus expand with limited contingent liability." This pattern continues throughout the respective documents. There are a finite number of advantages associated with franchising. Francorp's copyright prohibits a competitor from copying the outline wholesale, but it does not preclude them from discussing these advantages. To some extent they must even use the same terminology. Many of the words used, such as "capital" and "contingent liability," are terms of art which cannot be readily expressed any other way. Although iFranchise identifies many of the same advantages, these are ideas, which are not protected. The lists are organized differently, and the explanations are only similar to the extent they express the same concept. The original expression, here basically limited to the precise wording, is distinct.

Part XV discusses how to determine whether a business is franchisable. Again, the two documents address many of the same ideas. Some examples:

| Francorp | iFranchise |
|---|---|
| Operating prototype | Refined and successful prototype |
| Well organized – A SYSTEM | Documented systems |
| Adaptable nationally | Adaptability |
| Point of difference | Differentiation |
| Teachable to others | Transferability of knowledge |
| Established sufficiently to be credible | Credibility |

Considering these criteria as factors is an unprotectable idea. Even the specific words are only entitled to minimal protection because Francorp uses such short phrases to represent each concept. By contrast, these phrases only reflect the subject headings on the iFranchise site. Each is followed by an explanatory paragraph. This is a substantial difference in structure. Another is that Francorp divides its analysis into 20 points, whereas iFranchise uses only nine.

But the bottom line is that the factors that should be considered in determining whether a business is franchisable reflect an idea that defendant is free to use.

Part XXV of Francorp's outline identifies "The First Step" as

A. Talk to an Analyst
B. Consultation

The iFranchise website tells customers "The Next Step" is to "Talk to one of our Senior Consultants." Both companies are in the business of being consultants. Asking potential customers to talk to them is hardly original. Nor is the similarity between the two phrases of any consequence. Once again, short phrases are generally not protected, and this one is so generic that it simply cannot be considered original.

Allegation 5 contends that iFranchise's "The Process of Franchising" is copied from Francorp's proposal document detailing its process. A process is an idea and cannot be protected by copyright. To prevail on a copyright theory plaintiff must show some original expression that was copied, not just its process. The following example, discussing offering circulars, is indicative of just how different the expressions are:

> Francorp will draft, and submit to the client's attorney for review and approval, the Offering Circular required by the Federal Trade Commission and state regulatory agencies for purposes of disclosure. This document will contain required information arranged in the format stipulated by state and federal laws. ... Should revisions be required, they will be done on the same basis as revisions to the Franchise Agreement.

The iFranchise site, by comparison, says:

> To be legally entitled to sell franchises, the franchisor will need to develop a franchise agreement, a Uniform Franchise Offering Circular, and will need to file with appropriate state authorities on a national basis ... . The franchisor will also need to maintain ongoing compliance ... and will need to be able to document compliance with state and federal law on an ongoing basis. These legal requirements are relatively easily met through the use of an attorney with

substantial franchise experience.

Both documents also discuss operations, training, manuals and brochures, but in comparably distinct language. The process may be similar, but the expression is completely different.

Allegation 6 is even thinner. Both deal with "International Expansion," and both companies situate this section under "Services for Franchisors." These two phrases are generic and cannot be protected. The text itself is completely different:

> With offices in [foreign cities], Francorp is strategically positioned to assist franchisors with their expansion plans. In addition, through its overseas contact, Francorp can introduce franchisors to Europe and Asia.
>
> \* \* \*
>
> The iFranchise Group, through alliances with franchise professionals around the world, can assist in the international brokerage of your franchise.

Both promote their ability to use foreign contacts for their clients' benefit – an idea. The expression however, has little, if anything, in common.

Allegation 7 is equally weak. It contends that iFranchise's one-page discussion of "Franchising as an Alternate Channel" is copied from the Executive Summary, Introduction and Summary & Conclusion sections of its report. The iFranchise page does identify "increased control" and "ability to generate fees" as benefits of franchising. Francorp's report identifies the same two benefits. But the discussion is completely different. Defendant can use the same idea, that these are two benefits, without infringing the copyrighted expression – the way Francorp explained the concept.

Ultimately, it appears that all that the iFranchise website has in common with Francorp's materials is subject matter. This necessarily means there will be some overlap in process and terminology, but the structure and explanations are unique. As a matter of law,

no protected expression has been infringed.

Defendants also request that we award attorneys' fees under 17 U.S.C. §505. Our authority to do so is not limited to frivolous claims, but is discretionary. *See* <u>Harris Custom Builders, Inc. v. Hoffmeyer</u>, 140 F.3d 728, 729 (7th Cir. 1998). This case involves numerous claims and counterclaims. In four separate opinions we have now pared down these claims to the most appropriate ones. Although we certainly encourage parties to avoid a scattershot approach, *i.e.*, filing as many claims as are conceivable to see which ones stick, we do not find that attorneys' fees are appropriate.

## III. Deceptive Trade Practices (Counterclaim II)

This count alleges that Francorp violated the Illinois Uniform Deceptive Trade Practices Act (DTPA), 815 ILCS 510/2, by disseminating misleading promotional materials and engaging in the unauthorized practice of law. MSA initially moved for summary judgment on this claim. However, instead of responding on the merits, Francorp argues that we do not have subject matter jurisdiction over this claim. We agreed to bifurcate the motion and address the jurisdictional question first.

Counterclaim II arises under state law, specifically the DTPA. Counterclaim I, however, is a Lanham Act claim over which we have federal question jurisdiction. 28 U.S.C. §1331. The claims are sufficiently related that pendent jurisdiction is appropriate. 28 U.S.C. §1367. Francorp raises three distinct arguments why we should nonetheless refuse to hear counterclaim II: (1) unauthorized practice of law should be excluded from federal jurisdiction; (2) even if there is jurisdiction, federal courts should abstain from adjudicating it; and (3) MSA does not have standing to bring such a claim.

## A. Jurisdictional Exception

Plaintiff argues that unauthorized practice claims should be an exception to the general federal jurisdictional rules. The classic example of this concept, which Francorp maintains is analogous, is domestic relations. *See* Barber v. Barber, 21 How. 582 (1859). But this exception is very limited. Federal courts cannot issue divorce decrees, decide custody disputes or make alimony awards, but we can enforce an existing alimony order issued by a court of competent jurisdiction or decide a tort suit that has domestic implications. *See* Ankenbrandt v. Richards, 504 U.S. 689, 702-04 (1992). To our knowledge, this narrow domestic relations exception is the only one of its kind.[6] Congress has granted us broad jurisdiction over pendent claims, and has not divested us of jurisdiction over unauthorized practice claims. Because federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them," Colorado River Water Cons. Dist. v. United States, 424 U.S. 800, 817 (1976), we are constrained in creating new exceptions.

Moreover, this is not an action directly invoking the state's power to regulate the bar. It alleges that Francorp violated a statute, the DTPA, that we regularly apply in diversity and supplemental jurisdiction cases. This is a simple tort suit, similar to the one that the Ankerbrandt court found to be outside the domestic relations exception. This court has previously applied Illinois law to an unauthorized practice claim. *See* In re Martin P. Sadnick, 65 B.R. 840 (N.D. Ill. 1986). And other federal courts have also adjudicated unauthorized practice claims. *See, e.g.,* Haymond v. Lundy, 2000 WL 1824174 (E.D. Pa. Dec. 12, 2000). We

---

[6]This exception is not constitutionally required, but originated as a construction of the diversity statute. *See* Ankenbrandt, 504 U.S. at 700. There are, of course, many other limits on federal jurisdiction. Domestic relations, however, appears to be the only substantive area that federal courts have inferred to be totally off limits absent a specific statute to that effect.

are competent to determine whether Francorp's actions constitute deceptive trade practices, and we can see no jurisdictional impediment to our doing so. Because this tort action would fall outside any narrowly drawn exception anyway, we need not decide if there are other circumstances where state interests in regulating the bar may make federal intervention inappropriate.

B. Abstention

Francorp also suggests that we abstain from adjudicating this claim even if we have jurisdiction. We do not see a basis for doing so. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959). At various points Francorp makes at least cursory reference to several strains of abstention doctrine. See Burford v. Sun Oil Co., 319 U.S. 315 (1943) (Burford abstention); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) (Rooker-Feldman abstention); Younger v. Harris, 401 U.S. 37 (1971) (Younger abstention); Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) (Colorado River abstention). Unfortunately, beyond discussing the general proposition that there are situations where federal courts should abstain, plaintiff does not explain why any particular abstention doctrine should apply here. None does.

Burford is Francorp's most colorable argument. This form of abstention can apply in two scenarios: (1) review of "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" and

(2) review that "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 726-27 (1996). Neither applies here.

The first type requires some unsettled matter of state law. *See* International College of Surgeons v. City of Chicago, 153 F.3d 356, 363 (7th Cir. 1998). This suit is a straightforward application of the DTPA to an allegedly deceptive trade practice. The second type typically arises where the state has a strong interest in a single, coherent regulatory regime.[7] Illinois' Attorney Registration and Disciplinary Commission (ARDC) is the body charged with regulating the practice of law within that state. Francorp argues that federal jurisdiction over unauthorized practice claims would unduly interfere with this regime. But this suit does not implicate that system. It is a private action for deceptive trade practices, not an attempt to discipline an attorney. The ARDC does not have jurisdiction over non-lawyers, such as MSA. To the contrary, Illinois recognizes a private right of action in state court for unauthorized practice. *See, e.g.*, Torres v. Fiol, 441 N.E.2d 1300 (Ill. App. 1st Dist. 1982). This is very different from the unitary system present in Burford. Federal adjudication here is no different from any other state law claim falling within our supplemental jurisdiction.

Colorado River abstention is inappropriate here because that doctrine is predicated on concurrent proceedings. 424 U.S. at 817. The Court discussed several reasons why, in such circumstances, the interests of "wise judicial administration" might make federal abstention preferable. *Id.* For example, courts prefer to avoid piecemeal litigation whenever possible.

---

[7] In Burford, the state had invested a special commission with exclusive jurisdiction to hear oil drilling disputes, and consolidated review in a single court, regardless of where a particular case arose. The Court emphasized that this system was designed to ensure a single coherent policy.

If there is a pending state proceeding, a concurrent federal action might be duplicative, and could possibly yield an inconsistent result. Here, there is no pending state action to duplicate. If we were to abstain, however, MSA would be forced to pursue this portion of its overall dispute with Francorp elsewhere, most likely in state court. Abstaining on counterclaim II would create, not avoid, piecemeal litigation. This case is also at a much more advanced stage of the litigation. In Colorado River, all that had been filed prior to the motion in question was the complaint. This suit is much more advanced. Discovery is nearly finished and we have already decided multiple motions for partial summary judgment. Wise judicial administration suggests that we decide this case in its entirety, rather than send portions of it back to state court. That, after all, is the premise underlying supplemental jurisdiction in the first place.

Younger held that a federal court could not interfere with a pending state criminal proceeding. 401 U.S. at 54. This has been extended to the civil context, including attorney disciplinary proceedings. See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982). But the Court has emphatically stated that it, too, can only apply if there is a pending state proceeding. Ankerbrandt, 504 U.S. at 705. There is no such proceeding here. Younger, therefore, cannot apply.

Rooker-Feldman abstention is similarly inappropriate. While Younger precludes federal interference with pending state proceedings, this doctrine precludes federal district courts from reviewing completed state adjudications, even for federal constitutional infirmities. 460 U.S. at 476. There has been no state proceeding here, so Rooker-Feldman cannot apply.

### C. Standing

Finally, Francorp argues that MSA does not have standing to bring a claim predicated on the unauthorized practice of law. It maintains that there is no such private right of action, and that only the ARDC can initiate such proceedings. Further, it asserts that MSA, as a competitor, is not the proper party to bring such a claim. We disagree with both contentions.

First, although this count alleges the unauthorized practice of law, it is formally a DTPA action. That statute creates a private right of action to remedy deceptive business practices. *See* 815 ILCS 505/10(a). MSA alleges that by engaging in lawyer-like activities, Francorp was deceiving the marketplace. We can find no Illinois statute or case law excluding such practices, if they are indeed deceptive, from the DTPA's coverage. Even if we view this as a plain unauthorized practice claim, there is a private right of action for the unauthorized practice of law in Illinois. *See* Torres v. Fiol, 441 N.E.2d 1300 (Ill. App. 1st Dist. 1982). Francorp's alternative argument fails for much the same reason. This is a DTPA claim. The DTPA, by its own terms, gives competitors standing to bring suit. *See* Lawyers Title Ins. Corp. v. Dearborn Title Corp., 904 F. Supp. 818, 821 (N.D. Ill. 1995).

### CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment on count I is granted, but Siebert's motion for summary judgment on count X and Francorp's motion to dismiss counterclaim II are both denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Nov. 13, 2001.