

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1248 | **DATE** | 3/27/2002 |
| **CASE TITLE** | Francorp, Inc. Vs. Mark Siebert et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. MSA's motion for summary judgment on cunt II of its counterclaim is denied. (#85-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 28 2002 | |
| | Notified counsel by telephone. | date docketed | 157 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | cm | |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| WAH | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCORP, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| MARK SIEBERT, MARK SIEBERT & ASSOCIATES INC., also doing business as SIEBERT & ASSOCIATES, INC. and as THE IFRANCHISE GROUP, INC., DAN LEVY, and LAURIE LUDES, | ) ) ) ) ) ) |
| Defendants | ) ) |
| MARK SIEBERT & ASSOCIATES, INC., | ) ) |
| Counterplaintiff, | ) ) |
| v. | ) ) |
| FRANCORP, INC., | ) ) |
| Counterdefendant. | ) |

Case No. 00 C 1248

DOCKETED
MAR 2 8 2002

## MEMORANDUM OPINION AND ORDER

Defendant Mark Siebert & Associates, Inc. (MSA) moves for summary judgment on count II of its counterclaim, which alleged that plaintiff Francorp, Inc. violated the Illinois Uniform Deceptive Trade Practices Act (DTPA), 815 ILCS 510/2, by engaging in unauthorized practice of law. Plaintiff initially responded by raising several threshold issues, including subject matter jurisdiction and standing. We bifurcated our consideration and rejected plaintiff's jurisdictional arguments without reaching the merits of defendant's counterclaim. Francorp, Inc. v. Siebert, 2001 WL 1448533 (N.D. Ill. Nov. 13, 2001). Following additional

briefing from both parties, we now address those merits. For the following reasons, MSA's motion for summary judgment on count II of its counterclaim is denied.

## BACKGROUND

We have detailed the background of this dispute on multiple occasions. Francorp is a consulting firm that specializes in helping businesses form and develop independent franchises. In 1999, Francorp's then-president Mark Siebert left the company and formed a competitor franchise consulting firm, MSA. The two companies and various individuals affiliated with them have been mired in this litigation, encompassing seventeen claims and counterclaims, ever since.

The instant motion involves MSA's claim that Francorp is engaged in the unauthorized practice of law, and that this constitutes a deceptive trade practice. Francorp maintains that its services are strictly consulting, and that none falls within the definition of practicing law. Francorp's business involves informing clients about the benefits and disadvantages of franchising, and helping them to design and implement an appropriate program. Francorp advises its clients that they should consult with an attorney, and submits any documents drafted for the client to that attorney. Francorp's advertisements and brochures tout its staff's experience with and knowledge of franchising law and promotes the company as a "one stop shop." Francorp's staff does include licensed attorneys.

Francorp acknowledges that it helps prepare documents for its clients, including franchise agreements, offering circulars, licensing agreements, sub-franchise agreements, earnings claims documents and state registration certificates. Some of these documents are intended to be legally binding contracts. Others are prepared for filing with government

regulatory agencies. Francorp's in-house lawyers also critique legal documents prepared by other attorneys. Francorp maintains that it works in tandem with its clients' independent attorneys and that all legal documents are submitted to those attorneys for review.

MSA provides additional evidence about Francorp's practices and procedures for consulting with clients and their attorneys. According to the affidavit of Tommy Payne,[1] neither Francorp's in-house attorneys nor the clients' outside counsel were present at many decision making meetings. The record also includes a letter from one client's attorney describing his and Francorp's respective roles in the document preparation process. He explained that Francorp had primary responsibility for drafting documents and that he would only perform a limited review.[2] Francorp admits many of these facts, including its involvement in drafting documents, but disputes how MSA characterizes Francorp's services and challenges Payne's competence to state Francorp's current policies and procedures because he departed from Francorp in 1999.

## DISCUSSION

We may only grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* <u>Celotex Corp. v.</u>

---

[1] Payne was one of Francorp's in-house lawyers until 1999, when he departed the company and began working with MSA. He is also a party in this dispute.

[2] The letter, from attorney Robert Zarco, states in part:
> However, please understand that as a result of my agreeing to undertake this project for a reduced fee, by virtue of this letter, I am explaining to the [clients] that I will not be able to undertake a full and in-depth analysis of the franchise documents nor will I agree to rewrite any portions of those franchise documents which may need revision, as I would have done had I been hired at the outset or if I were charging my regular fee. It simply is not fair to me or my firm to, in essence, re-create these franchise documents for the [clients] for this reduced fee as this is clearly Francorp's responsibility.

3

Catrett, 477 U.S. 317, 322-23 (1986). We must also draw all inferences and view all admissible evidence in the light most favorable to Francorp, the non-moving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This does not mean there must be absolutely no evidence supporting the non-moving party, but rather there is not enough to support a reasonable jury verdict. *Id.* at 248.

MSA maintains that Francorp is effectively practicing law, and argues that providing unauthorized legal services gives Francorp an unfair competitive advantage over law abiding franchise consultants. This claim is stated under the DTPA, 815 ILCS 510/2. The primary purpose of the statute is to prohibit unfair competition. *See* Phillips v. Cox, 632 N.E.2d 668, 670 (Ill. App. 5th Dist. 1994). It targets "acts which unreasonably interfere with another's conduct of his business." *Id.* The statute does not enumerate an exhaustive list of prohibited practices, but instructs courts to construe it liberally and "to expand the coverage of the act to include new forms of deceptive conduct which might arise in the future." *Id.* at 671, *quoting* Ill. Ann. Stat., ch. 121 1/2, par. 312, Prefatory Illinois Notes, at 251 (Smith-Hurd Supp. 1992). Other courts have recognized that unauthorized practice of law can be a deceptive trade practice. *See, e.g.,* In re: Samuels, 176 B.R. 616, 626 (Bankr. M.D. Fla. 1994). We agree.

Francorp defends on three distinct grounds. It maintains that (1) its services do not constitute unauthorized practice of law; (2) it has done nothing to mislead consumers; and (3) MSA has not proven any injury. We will address these in reverse order.

First, the DTPA does not require proof of monetary damages or lost profits. 815 ILCS 510/3. We may enjoin conduct if "there exists a reasonable probability that petitioner will otherwise incur actual damage." Bally Mfg. Corp. v. JS&A Group, Inc., 410 N.E.2d 321 (Ill.

4

App. 1st Dist. 1980). Francorp asserts that its document drafting services cannot harm MSA because MSA does not offer a comparable service. We disagree. This is, in fact, the essence of MSA's claim. The parties are direct competitors in the franchise consulting business. MSA contends that it may not perform certain services because they are illegal. To the extent the Francorp is able to engage in unauthorized practice of law unabated, it has a distinct competitive advantage over consultants who do not attempt to offer legal services. This is a sufficient competitive injury to prevail under the DTPA.

Second, Francorp maintains that its clients are not being misled because it does not represent itself as practicing law and because it recommends that all clients retain independent legal counsel. Further, MSA has not shown that any clients were actually misled into believing that Francorp was acting as their attorney. Neither of these propositions, however, is sufficient to defeat MSA's claim. The DTPA only requires a reasonable likelihood of confusion or misunderstanding, not proof of actual confusion. *See* <u>Williams v. Bruno Appliance & Furniture Mart, Inc.</u>, 379 N.E.2d 52, 54 (Ill. App. 1st Dist. 1978). Even if Francorp's clients understand that Francorp is not acting as their attorney, there is still a likelihood of confusion about the scope of Francorp's services. Francorp actively promotes itself as a "one stop shop" and touts its experience in dealing with franchise law. Clients could reasonably be confused as to the division of responsibilities between their lawyers and Francorp, and may not understand the legal consequences of Francorp's, a non-lawyer's, involvement in drafting legal documents.[3]

---

[3] Illinois recognizes unauthorized practice as a defense in a private civil action. *See* <u>In re: Sadnick</u>, 65 B.R. 840, 842 (N.D. Ill. 1986), *citing* <u>Biggs v. Schwalge</u>, 93 N.E.2d 87 (Ill. App. 1st Dist. 1950). Although we decline to speculate whether Francorp's clients, or their contractual partners, could challenge the validity of

5

Finally, we turn to the question of whether Francorp is engaged in unauthorized practice of law. On this point, Francorp again raises three arguments: (1) it has licensed attorneys on its staff to perform any legal work; (2) clients' independent counsel reviews all documents; and (3) Francorp services do not constitute practicing law.

Illinois prohibits corporations from practicing law. *See* Corporate Practice of Law Prohibition Act, 705 ILCS 220/1; *see also* Johnson v. Pistakee Highlands Community Ass'n, 390 N.E.2d 640, 642 (Ill. App. 2d Dist. 1973). This rule includes licensed attorneys who work for corporations, *i.e.*, in-house counsel. These lawyers are permitted to do legal work on behalf of the corporation, but may not act as attorneys for the corporation's clients. Lay corporations may prepare legal documents that are incidental to their primary business. For example, a bank, in the business of making loans, may draft and execute loan documents defining its relationship with the borrower. In re: Sandick, 65 B.R. 840, 843 (N.D. Ill. 1986), *citing* Johnson, 390 N.E.2d at 642. But this exception is not applicable here. The documents in question are not contracts defining Francorp's relationship with its clients, such as engagement letters or fee agreements. They are documents prepared on behalf of clients to govern their relationships with third parties.

Francorp points out that there are specific circumstances where lawyers employed by lay organizations can be paid specifically for their legal work. Union lawyers, for example, may represent and receive payment for their representation of union members. *See* Curran v. Department of Treasury, 805 F.2d 1406 (9th Cir. 1986). But there are two material

---

a contract that Francorp drafted on that basis, the possibility only highlights how purchasers of unauthorized legal services may not be getting the product they believed they had purchased.

distinctions between the present case and Curran. First, union lawyers' sole duty of loyalty is to their members. There is no conflict of interest in their representation of a member in litigation. Francorp's in-house lawyers' duty of loyalty runs primarily to the corporation, not to the client. This divided loyalty is precisely what the prohibition on corporate practice of law is intended to prevent. Second, ethics rules prohibit lawyers from splitting fees with non-lawyers. The Curran court emphasized that any attorney's fees it awarded would go into an independent litigation fund controlled exclusively by lawyers. *Id.* at 1408. Francorp's clients pay their fees to the corporation. Francorp's in-house lawyers may not perform legal work for Francorp's clients.

Next, Francorp maintains that its involvement in drafting legal documents does not constitute unauthorized practice of law because it submits the documents to clients' independent attorneys for review. If Francorp is drafting documents that should be prepared by an attorney, simply having a licensed attorney review and "sign off" on those documents does not absolve the company from unauthorized practice. *See* In re: Discipio, 163 Ill.2d 515 (1994). Independent lawyers must do all the legal work. The parties argue extensively about the level of complexity of franchise law, and the relative experience of Francorp's consultants in dealing with franchise law as compared to most lawyers. These are both immaterial. A reasonable argument can certainly be made that a client's interests are well served if its own attorney is not an expert in franchise law and it can use the results of the services of Francorp's experienced attorneys. No matter how knowledgeable the lay person, or how inexperienced the lawyer, however, Illinois has rendered its judgment that certain tasks are to be performed only by licensed attorneys directly engaged by the client.

7

The decisive question is whether Francorp engages in activities that Illinois has reserved for attorneys. Illinois courts have not adopted a precise definition of "practice of law." *See* In re: Sandick, 65 B.R. at 842. We evaluate each case individually to determine whether the activity in question requires specialized legal training beyond that of a layperson. *Id.* Courts have recognized that consulting in law related fields is not same as practicing law. *See, e.g.,* Sequa Corp v. Lititech, Inc., 780 F.Supp. 1349, 1352 (D. Col. 1992). But the line between consulting and practicing is sometimes a blurry one. For example, non-lawyers may help others negotiate and collect claims. But they may not advise a third party on the legal significance of a document. We find one explication from the Illinois Supreme Court particularly apt here:

> Where a will, contract, or other instrument is to be shaped from facts and conditions, the legal effect of which must be carefully determined by a mind trained in the existing laws in order to insure a specific result and guard against others, more than the knowledge of the layman is required, and a charge for such service brings it definitely within the term "practice of law."

People *ex rel.* Illinois State Bar Ass'n v. People's Stock Yards State Bank, 176 N.E. 901, 908 (Ill. 1931). Simply filling in the blanks on standardized forms drafted by attorneys, if doing so requires legal judgment, can constitute unauthorized practice. *See* Chicago Bar Ass'n v. Quinlan & Tyson, Inc., 214 N.E.2d 771, 775 (Ill. 1966).

Francorp has admitted many of the pertinent facts, including its involvement in the creation of legal documents such as franchise agreements, offering circulars and registration certificates. These activities fall within the description offered in People's Stock Yard, *supra*. One who drafts franchising agreements must exercise judgment with respect to franchise, trademark and contract law, among others, to ensure that the document produces the desired

8

results and guards against undesired ones. One who reviews documents produced by a lawyer, critiques them and advises another of their legal consequences, is practicing law. The activities here are particularly analogous to those prohibited by Quinlan & Tyson, *supra*, which found that "[d]rafting and attending to the execution of instruments relating to real-estate titles are within the practice of law." Drafting franchise agreements, offering circulars and licensing agreements and executing registration certificates is practicing law. Payne's description of Francorp's practices and the Zarco letter suggest that Francorp is doing significant legal work, with clients' independent counsel merely doing a cursory review of the final documents. The way Francorp advertises its services lends credence to these allegations. It promotes itself as a "one stop shop" and appears to trade on its knowledge and experience in the area of franchise law. The activities attributed to Francorp's in-house lawyers – drafting documents and critiquing documents drafted by other attorneys – are the type that lawyers typically perform for their clients. As discussed above, in-house counsel may not act as attorneys on behalf of their employer's clients.

Nonetheless, we find that summary judgment is inappropriate. Francorp insists that clients' independent counsel are responsible for any legal work product. All of Francorp's clients, as far as we can tell from the agreed facts, are represented by counsel. The precise division of responsibilities between Francorp and independent counsel is still unclear and very much in dispute. Francorp contests Payne's description of its services. And we do not know anything about the context in which Zarco wrote that letter. A fact finder will ultimately have to determine the extent of Francorp's involvement in creating legal documents and whether those activities crossed the line from consulting into legal practice.

## CONCLUSION

For the forgoing reasons, MSA's motion for summary judgment on count II of its counterclaim is denied.

_James B. Moran_
JAMES B. MORAN
Senior Judge, U. S. District Court

March 27, 2002.